**STATE of Missouri ex rel. MISSOURI HIGHWAYS AND TRANSPORTATION COMMISSION, Plaintiff-Respondent,**

v.

**Peter J. LEGERE, Defendant-Appellant,**

v.

**Edward THOMPSON and Delbert Wrinkle, Third-Party Defendants-Respondents.**

No. 13862.

Missouri Court of Appeals, Southern District, Division Two.

March 10, 1986.

---

Robert W. Schroff, James W. Newberry, Schroff, Glass & Newberry, P.C., Springfield, for plaintiff-respondent.

Frank Cottey, Michele L. Wilson, Bussell, Hough, O'Neal, Crouch & Hall, Springfield, for defendant-appellant.

PREWITT, Chief Judge.

Defendant Peter J. Legere appeals from an adverse judgment resulting from a collision between a car operated by him and a dump truck owned by the State of Missouri being used by the Department of Highways and Transportation.

The State, at the relation of the Missouri Highways and Transportation Commission, brought an action against Legere for property damage as a result of the collision. Legere then filed a counterclaim and a third-party petition against Edward Thompson and Delbert Wrinkle for personal injuries suffered in the collision. Following trial by jury, judgment was entered in accordance with the jury verdict, in favor of plaintiff on its claim and against defendant Legere on his counterclaim and third-party petition.

On March 6, 1980, defendant Peter J. Legere was operating a 1972 MGB automobile in a generally eastbound direction on Interstate Highway 44 in Laclede County. Interstate Highway 44, in the vicinity of the collision, is a four-lane highway with two lanes for travel in each direction. The east and westbound lanes are divided by a grass median. While in the inside eastbound lane, defendant struck the rear of a maintenance dump truck owned by plaintiff. The dump truck was being used to protect a work crew employed by plaintiff to repair cracks along the highway. As defendant's vehicle was passing a tractor trailer truck, defendant saw the dump truck ahead and applied his vehicle's brakes, approximately 100 feet from the dump truck, but was unable to stop before colliding with the rear of the dump truck. The dump truck was either stopped or moving easterly at three to four miles per hour.

Plaintiff's action was based on allegations that defendant negligently caused the

collision through failure to keep a careful lookout, and failure to avoid the accident after danger of collision became apparent. Defendant based his claim for personal injury on the negligence of plaintiff and third-party defendants, two of the crew members, in failing to adequately warn of the presence of the stopped or slowly moving dump truck on the highway. Among defendant's contentions of negligence were allegations that plaintiff and the third-party defendants did not put up proper warning signs, did not place a warning sign on the back of the maintenance dump truck, and did not use an electric arrow or warning sign.

█ In his first point defendant contends that the trial court erred in giving instructions submitting to the jury whether defendant was guilty of fault in failing to swerve his automobile. Defendant asserts that there was no evidence to support that submission as there was no evidence that swerving alone would have avoided the collision.

In determining whether the evidence supported the instructions, we review the evidence from a viewpoint most favorable to plaintiff, giving plaintiff the benefit of every reasonable inference which the evidence tends to support and disregarding defendant's evidence unless it aids plaintiff. *Wardenburg v. White*, 518 S.W.2d 152, 154 (Mo.App.1974).

The mobility of a car and the quickness with which it may be swerved is a matter of common knowledge. *Jenkins v. Jordan*, 593 S.W.2d 236, 239 (Mo.App.1979). Formal proof is unnecessary that present day automobiles respond quickly and accurately to a turn of the steering wheel. Id.

The most favorable evidence to plaintiff on whether defendant could have swerved his car and avoided the collision included that the inner eastbound lane was 12 feet wide; the work crew was pouring oil in the crack at the left edge of that lane where it meets the paved shoulder; and the dump truck was "essentially straddling" the crack. The truck, 7½ feet wide, was "half on and half off the shoulder." Conse-

quently, no more than 3¾ feet of the truck was protruding into the inner eastbound lane. This left at least 8¼ feet in that lane for defendant's MGB, a small car, to have passed through if it was swerved to the right. The truck that defendant was passing just before the collision was in the "middle" of the outer eastbound lane.

█ *Robinson v. Richardson*, 484 S.W.2d 27, 29 (Mo.App.1972), states that we can take into account, apparently through judicial notice, the width of modern cars. If appellate courts can judicially notice that a 1954 Chevrolet is less than six feet wide, as was done in *Martin v. Sherrell*, 418 S.W.2d 209, 212 (Mo.App.1967), and that the distance from the center of one front tire to the center of another front tire on a Chevrolet automobile was about four and one-half feet, as in *Fisher v. Gunn*, 270 S.W.2d 869, 873 (Mo.1954), then we should be able to judicially notice that plaintiff's 1972 MGB was less than 8¼ feet wide.

Defendant testified that he realized that the dump truck was stopped when he was approximately 300 feet from it and that he applied his vehicle's brakes approximately 100 feet before colliding with the truck. Plaintiff presented evidence that the dump truck could have been seen by persons in vehicles traveling east approximately ½ mile away. Thus, there was evidence sufficient for the jury to find that if defendant had reacted when danger of collision should have been apparent, he had the time and space to have swerved to the right and missed the truck.

Also, Howard Mott, the driver of the truck defendant was passing just before the collision, testified that when defendant applied the brakes of his car, Mott started pulling his truck to the right and as he passed the dump truck, Mott's truck was off the road and the "whole lane was open to the right of the dump truck". Defendant testified that even when he was applying the brakes he still had control of his car.

In addition, during cross-examination, Mott testified that if defendant had proceeded without applying his vehicle's brakes there was "room to cut in and around" the witness's truck. Although this appears to be a conclusion, there was no objection. Conclusionary evidence received without objection, is to be considered in determining if a submissible case is made; its probative worth and value is for the trier of facts. *Bourne v. Manley*, 435 S.W.2d 420, 428 (Mo.App.1968).

Based upon the evidence most favorable to plaintiff, there was sufficient evidence to submit to the jury instructions on defendant's failure to swerve. Point one is denied.

Defendant states in his second point that the court erred in allowing a witness to testify because his identity had not been properly revealed in answers to interrogatories. At trial defendant's counsel objected to the witness's testimony because the witness was not mentioned in answers to defendant's interrogatories to plaintiff inquiring of witnesses present at the scene of the collision, "between the hours of one p.m. and three p.m. on the 6th day of March", 1980. The witness testified he did not arrive at the scene until after 3:00 p.m.

Defendant now claims that the witness should have been excluded because his identity was not supplied in an answer to an interrogatory requesting the names and addresses of persons at the scene of the collision "within three hours after the accident."

"It is well established that a litigant may not interpose one objection to evidence in the trial court and different objections to the evidence on appeal." *Lee v. Rolla Speedway*, 539 S.W.2d 627, 632 (Mo.App. 1976). As the contention presented to us was not presented to the trial court before the court made its ruling allowing the testimony, it cannot be considered by us. This point is denied.

Defendant contends in his third point that the trial court erred in preventing him from presenting certain rebuttal evidence after the third-party defendants had rested. Under this point defendant cites only *Smith v. Ray M. Dilschneider, Inc.*, 283 S.W.2d 631 (Mo.1955). That case did not involve an attempt to offer rebuttal evidence. There, the plaintiff sought to reopen his case after he had rested, to introduce into evidence a letter. The trial court denied the request and sustained a motion for directed verdict at the close of plaintiff's evidence.

This would not be a matter of first impression and no relevant authority was cited to us. "Ordinarily, a point of error unsupported by a citation of relevant authority is deemed abandoned." *Wright v. Martin*, 674 S.W.2d 238, 242 (Mo.App. 1984). Where a point is not so novel or unique that authorities would be unavailable, the point should be considered abandoned if no relevant authority is cited. Id. We consider it abandoned here.

Defendant states in his fourth point that the court erred in ruling that an expert employed by defendant would not be permitted to testify. The trial court ruled that the proposed witness's testimony was not proper and that the witness also should not be allowed to testify because his identity was not revealed, in compliance with plaintiff's interrogatories to defendant, to plaintiff's counsel sufficiently in advance of the trial. Plaintiff's attorney was advised of the expert on March 15, 1984, when supplemental answers to interrogatories were delivered to his office by defendant's counsel. Trial commenced on April 2, 1984. Plaintiff's attorney objected to the witness being allowed to testify, stating that at the time he was notified of the witness there was not sufficient time to depose him and "find a counter-expert witness".

The witness was to testify regarding the sufficiency of the warnings used by plaintiff to warn motorists of the work on the highway and on reaction time. Whether all or a part of his proposed testimony might have been admissible we do not decide. That question might be better left to a case where testimony of the witness is preserved in the record rather than an oral

offer of proof by counsel as to what he believed the witness would say.

The trial court has wide discretion in the admission or exclusion of testimony when it is challenged on the basis that it was not properly disclosed by answers to interrogatories. *McClanahan v. Deere & Co.*, 648 S.W.2d 222, 230 (Mo.App.1983). See also *State ex rel. State Highway Commission v. Cool's Tall Tower Restaurant & Marina*, 654 S.W.2d 224, 226 (Mo.App.1983).

Apparently plaintiff had not arranged for an expert regarding the sufficiency of the warnings and of reaction time and defendant had not earlier listed any expert in those areas. The witness's deposition could have been taken but time to employ a similar expert, if needed, might have been lacking. Under the circumstances the trial court did not abuse its discretion.

■ In his fifth point defendant contends that the trial court erred in refusing to admit into evidence an exhibit "identified as a revision of the traffic manual in effect at the time of the collision" and in "instructing counsel for defendant not to inquire of Witness Beard regarding the warnings and safety devices described in the exhibit". Apparently the manual was distributed by plaintiff the September following the collision. The exhibit was not filed with us.

It was appellant's duty to file a record on appeal containing all of the record, proceedings and evidence, including exhibits, necessary to determine this question. *Jo B. Gardner, Inc. v. Beanland*, 611 S.W.2d 317, 320 (Mo.App.1980); *Lewis v. Columbia Mutual Insurance Co.*, 588 S.W.2d 161, 162 (Mo.App.1979); Rule 81.12(a). See also Rule 81.15. Absent an examination of the document, we cannot say that the trial court erred in excluding the exhibit or questions about it. This point is denied.

■ In his sixth point defendant contends that the trial court erred in excluding certain exhibits relating to warning equipment, and in sustaining objections to questions asked by defendant's counsel as to whether an electric arrow and warning sign located on both sides of the highway would have provided more protection and safety to motorists. Defendant contends that this evidence was relevant "to the issue of the sufficiency of warnings, in that each matter evidenced the availability and advantages of alternatives to the warning devices allegedly used at the time of the collision."

As authority for this point defendant cites only *Evans v. Sears, Roebuck & Co.*, 104 S.W.2d 1035 (Mo.App.1937). *Evans* held that testimony of the failure of defendant to cover snow and ice on a driveway with sawdust, shavings, or sand, was admissible. In *Evans*, the plaintiff alleged that the defendant was negligent in failing to spread a covering of any kind on the driveway when it should have known of its slippery and unsafe condition. Defendant states here:

> In the instant case, as in the *Evans* case, the evidence which defendant attempted to introduce would have shown a method of making the presence of the dump truck known and thus safe to oncoming motorists. It is true that the evidence offered by defendants, and excluded by the Court, dealt with an alternative to the means allegedly used by the Highway Department at the time of collision. However, the availability of alternative means of warning approaching motorists was the very evidence the jury needed in deciding whether the means selected by plaintiff were sufficient.

We do not find *Evans* persuasive. There, the evidence showed a duty to warn or make an area safe and nothing was done. Here, the question was whether what was done was adequate. In *Evans*, the evidence was admissible as to what might have been done. There was not an issue as to what more could have been done or of alternative procedures to what was done. Whether we might be persuaded that portions of the evidence offered should have been admitted, were we provided with more persuasive authority, we do not decide. We merely hold that *Evans* does not

sustain appellant's burden of showing that the trial court erred.

■ In his seventh point defendant contends the trial court erred in quashing his subpoena duces tecum served upon Paula Lambrecht, an attorney for the highway department who participated in the trial, requesting her to produce during the trial statements taken from the highway department crew members present at the scene of the collision. Defendant contends that the statements were admissible to impeach the crew members who had been called as witnesses by plaintiff and had testified regarding the facts of the collision. Plaintiff contends that the trial court correctly quashed the subpoena because the statements "constituted privileged attorney-client communication and because it was not shown that such statements would be admissible for any purpose."

Defendant cites and relies only on *Halford v. Yandell*, 558 S.W.2d 400 (Mo.App. 1977). Plaintiff attempts to distinguish *Halford* and relies on *State ex rel. Cain v. Barker*, 540 S.W.2d 50 (Mo. banc 1976). In the present case, at trial, plaintiff's counsel referred to *Cain* and requested that the subpoena be quashed because the statements were "work product and they're not to be discoverable."

Work product immunity is distinct from attorney-client privilege, but they are often confused. Missouri courts now appear to be clarifying the distinction between them. See McMullen and Foster, Work Product in Missouri, 50 Mo.L.Rev. 563, 568 (1985). See also *Halford,* supra, 558 S.W.2d at 404.

"Work product" is a qualified immunity under Rule 56.01(b)(3), which denies materials prepared in anticipation of litigation or trial except upon a showing of substantial need that a party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. *May Department Stores v. Ryan*, 699 S.W.2d 134, 136 (Mo.App.1985). In contrast, any professionally oriented communication between attorney and client is absolutely privileged, in the absence of waiver, regardless of substantial need. Id. See also

*State ex rel. Cain v. Barker*, supra, 540 S.W.2d at 52, 57–58 (under Rule 56.01(b)(1), if matter is privileged, it cannot be produced for pretrial discovery even if a showing of need is made).

■ *State ex rel. Terminal R. Ass'n. v. Flynn*, 363 Mo. 1065, 257 S.W.2d 69, 73 (banc 1953) says that a statement concerning an accident obtained by an employer from his servant, to be transmitted to the employer's attorney for advice or to be used by the attorney in connection with pending or threatened litigation, is privileged as a part of the communication from the client to his counsel. The parties agree that this was the type of statement in question here. Although certain portions of *Flynn* should no longer be followed, see *Porter v. Gottschall*, 615 S.W.2d 63, 65 (Mo. banc 1981), it appears that the portion relevant here, while dictum, still states the correct rule and has been followed in subsequent appellate decisions in Missouri. See *May Department Stores v. Ryan*, supra, 699 S.W.2d at 137.

Whether the statements were prepared in plaintiff's "ordinary course of business" does not prevent them from being under the attorney-client privilege as they were in "anticipation of litigation". See *May*, supra, 699 S.W.2d at 138. See also McMullen and Foster, supra, 50 Mo.L.Rev. at 579.

Although *Flynn* was a pretrial discovery case, it has been followed where a subpoena duces tecum seeks a statement for use at trial. See *Martin v. Lingle Refrigeration Co.*, 260 S.W.2d 562, 566 (Mo.1953); *Lindberg v. Safeway Stores, Inc.*, 525 S.W.2d 571, 572 (Mo.App.1975). See also *Hammack v. White*, 464 S.W.2d 520, 523–524 (Mo.App.1971). These latter three cases do not discuss the distinction between obtaining materials through pretrial discovery mechanisms and by subpoena duces tecum at trial.

*Halford* discusses this distinction. It holds that after eliciting on direct examination at trial testimony from a non-party witness, a party could not validly interpose a work product objection to the other par-

ty's use of the witness's prior inconsistent statement for impeachment purposes. 558 S.W.2d at 410. The opinion does not decide if an objection based upon the attorney-client privilege would have been correct. Id. at 404.

Based on *Flynn, Martin* and *Lindberg,* the statements were not subject to subpoena because of the attorney-client privilege. Even if plaintiff's objection was improper, at least absent waiver of the attorney-client privilege, the trial court's ruling was correct.\* "Correct trial court decisions on the admission or exclusion of evidence will not be grounds for reversal because they are based on incorrect reasons." *Roach v. Consolidated Forwarding Co.,* 665 S.W.2d 675, 682 (Mo.App.1984). See also *Thompson v. Bi-State Transit System,* 458 S.W.2d 903, 905 (Mo.App.1970) (if evidence was properly excluded the form of the objection is not a ground for relief). Point seven is denied.

█ In his eighth point defendant asserts that the trial court erred in allowing evidence of defendant's speed "at a point remote from the collision scene". Defendant contends that the testimony was irrelevant, and "highly prejudicial" because the testimony implied that defendant was "driving in excess of the speed limit."

To be admissible, evidence of prior speed must be "connected" with the speed of a vehicle just before the collision, or when danger of it should have been apparent, "in such a way that the conduct of the driver may be said to be continuous. This on the concept that because the speed of a vehicle may be altered, proof of its speed at one point does not prove speed at another unless there is a factor which offers a finding or inference that the speed was constant." *Stapleton v. Griewe,* 602 S.W.2d 810, 814 (Mo.App.1980). See also *Shepard v. Harris,* 329 S.W.2d 1, 10–11 (Mo. banc 1959).

Howard Mott, the witness being questioned about defendant's speed, was the operator of the tractor trailer truck that defendant was attempting to pass just before the collision. Defendant had called Mott as a witness. On cross-examination Mott testified that his vehicle was traveling 55 miles per hour, as were three tractor trailer units following him. Mott said that shortly before the collision defendant had passed the three tractor trailer trucks and was passing his truck at the time defendant applied his brakes just before the collision. Defendant contends that the evidence of his speed at the time he passed the three tractor trailer trucks was too remote to be admissible. Defendant had earlier testified that for several miles before the collision he had been driving between 50 and 55 miles per hour and had never reached a speed greater than 55 miles per hour.

Although the evidence does not show how far from the point of collision defendant passed the three trucks, there was evidence that defendant was moving at a constant speed from that time until he applied the brakes approximately 100 feet from the point of collision. As there was evidence that defendant's vehicle's speed was constant, evidence of the prior speed was admissible. This point is denied.

█ Defendant's ninth point claims error in the giving of the measure of damage instruction on plaintiff's claim. The instruction given was a combination of MAI 4.02, "Damages—Property Only", and MAI 16.02, "Definition—Fair Market Value". Contrary to Notes on Use 1 under MAI 4.02, and Notes on Use under MAI 16.02, the second paragraph of 16.02 was included as the third paragraph of the instruction given here. This paragraph should be used only in eminent domain cases. Defendant contends that including this paragraph made the instruction erroneous because it

---

\* *Cain* states that the objection of privilege can be waived. See 540 S.W.2d at 57. Here, however, there is no contention that the privilege was waived. By referring to *Cain,* plaintiff's counsel obviously intended to include privilege as a basis for objection. The trial court may have so understood the objection. Apparently *Cain* had been cited to the judge during pretrial discovery. In addition, there was no disclosure of the confidential communications either before or after the objection was made.

was not supported by the evidence and was an "impermissible variation" from MAI. The instruction read:

> If you find in favor of plaintiff, then you must determine the total amount of plaintiff's damages to be such sum as you may find from the evidence to be the difference between the fair market value of plaintiff's truck before it was damaged and its fair market value after it was damaged.
>
> The phrase "fair market value" as used in this instruction means the price which the property in question would bring when offered for sale by one willing but not obliged to sell it, and when bought by one willing or desirous to purchase it but who is not compelled to do so.
>
> In determining fair market value you should take into consideration all the uses to which the property may best be applied or for which it is best adapted, under existing conditions and under conditions to be reasonably expected in the near future.

There was evidence indicating a use to which the truck could be put, shielding a work crew, and it was obvious that the vehicle could be used for hauling. However, that there may have been evidence of the uses to which the truck could have been put does not make the instruction proper. The instruction was erroneous for not following MAI, but that does not entitle defendant to a reversal unless it was prejudicial to him. See Rule 70.02(c); *Lewis v. Columbia Mutual Insurance Co.*, supra, 588 S.W.2d at 162.

Even assuming that the erroneous paragraph was not supported by evidence, that does not establish that the instruction was prejudicial, and we see no other reason making it so. The evidence of the truck's value before and after the collision was not related to the truck's use and there was no evidence that its use would affect its value. The jury could not have been misled as to what they were to find regarding the damage to the truck by the additional paragraph. We see no prejudice to defendant because of the instruction. This point is denied.

■ For his remaining point defendant states that the trial court erred in denying defendant's motion for a mistrial after the following occurred:

Q. [David W. Hall, Jr., attorney for defendant] Now did Mr. Schroff stand out there in the traffic the entire time that you went back....

COURT: Why is that material? It's six o'clock. Come on now.

HALL: Your Honor.

COURT: Why is that material whether he stood out there the whole time? This is delaying. Let's go. Let's get to a material point. I said no, you either proceed or set down and get to a material question. Now you're delaying this case.

HALL: I'm not delaying this case. Your Honor....

COURT: Ask your questions.

HALL: May I approach the bench?

COURT: All right, step down. That's all. We're going to take a short recess.

During the recess the jury left the court room and defendant moved for a mistrial because of the judge's comments. The request was denied. When the jury was brought back in, the judge stated:

> Ladies and gentlemen of the jury, I want to advise you that my remarks made just prior to the recess to Mr. Hall were out of line and I am apologizing to him in the presence of the jury that I was out of line in making those remarks to him and they were due to my impatience trying to rush the case along, which is unfair for me to do. These attorneys should have sufficient time to try the case on both sides and I direct you and ask you not to take that into consideration and hold it against me, not against any of the parties in this case, because I was out of line in directing him to speed up and saying he'd taken too much time. He's entitled to take as much time as he wants and with that, Mr. Hyder, you need to retake the stand,

and Mr. Hall will complete his cross-examination.

Granting a mistrial is a drastic remedy and whether to grant it is a matter within the sound discretion of the trial court. *St. Louis County v. Seibert*, 634 S.W.2d 590, 592 (Mo.App.1982). The trial judge's comments did not show that he believed or favored either side. The court's extended apology likely cured any prejudice and we find no abuse of discretion in not granting the mistrial here. In *Rooker v. Deering Southwestern Ry. Co.*, 206 Mo.App. 79, 226 S.W. 69, 70 (1920), cited by defendant, there was no apology. Compare *Palermo v. Cottom*, 525 S.W.2d 758, 766 (Mo.App. 1975) (shorter comment, but no apology; held not entitled to mistrial). The point is denied.

The judgment is affirmed.

HOGAN, P.J., and MAUS and CROW, JJ., concur.